*998TEXTO COMPLETO DE LA SENTENCIA
Mediante la presentación de recursos de apelación independientes, acuden ante nos Wal-Mart Puerto Rico, Inc. H/N/C Sam's Club y Jeannette Mestre Rodríguez solicitando que revoquemos o modifiquemos una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Humacao, el 21 de marzo de 2000, en la que se ordena al primero a pagar los sueldos que la segunda hubiere devengado desde el 30 de enero de 1996, a pagarle la suma de $10,000.00 en daños y perjuicios y otra suma de $3,000 en honorarios de abogado. Por resolver que Jeannette Mestre Rodríguez fue despedida sin justa causa mientras se encontraba disfrutando de una licencia del Fondo del Seguro del Estado, ordenamos a Wal-Mart Puerto Rico, Inc. H/N/C Sam's Club a reinstalarla en su empleo de test scanner, a pagarle los salarios que hubiere devengado desde el 29 de enero de 1996 hasta la fecha en que sea reinstalada en su empleo, la suma de $6,830.00 en daños y perjuicios y el 15% de la suma total de la compensación e indemnización concedida en concepto de honorarios de abogado. Así modificada, confirmamos la sentencia apelada.
I
Jeannette Mestre Rodríguez (Mestre) es casada y madre de varios niños. El 13 de junio de 1995, Mestre comenzó a trabajar en la tienda Sam's Club núm. 6515 (Sam’s) localizada en el Municipio de Humacao, aprobando su período probatorio el 25 de septiembre de 1995. Mientras Jeannette trabajó en Sam's, ella ocupó las plazas de vendedora de membresías, supervisora de cajeras, vendedora de licores y test scanner. El mayor salario *999devengado por Mestre mientras trabajó para Sam's fue a razón de $6.50 la hora.
El 25 de octubre de 1995, la supervisora Zoraida Carrasquillo redactó una amonestación a Mestre, por ésta haberse ausentado los días 25 y 30 de septiembre de 1995, y los días 9, 20 y 21 de octubre de 1995. El 6 de noviembre de 1995, el supervisor Pablo Vega redactó otra amonestación a Mestre, por ésta actuar de manera compulsiva, tomando decisiones sin antes analizar las consecuencias de las mismas y cómo éstas podían afectar a sus compañeros de trabajo. El 5 de diciembre de 1995, el supervisor Pablo Vega redactó una tercera amonestación en contra de Mestre. En la misma, Pablo Vega informó que Mestre se ausentó los días 9, 15 y 30 de noviembre de 1995 y el día 1ro. de diciembre de 1995. También, en la amonestación se informó que los días 21 y 22 de noviembre de 1995, Mestre "se fue antes de la hora de salida por citas y enfermedad del hijo." Apéndice del recurso de apelación KLAN-00-00529, anejo XXV, págs. 222-223.
El 11 de diciembre de 1995, Mestre se lastimó la espalda mientras realizaba sus funciones como test scanner en Sam's. Al otro día, ella acudió al Hospital Regional de Humacao. En el hospital le tomaron placas de rayos x, las cuales reflejaron una inflamación en su espalda. El 15 de diciembre de 1995, Mestre visitó las facilidades del Fondo del Seguro del Estado (FSE), en donde se le ordenó a descansar en lo que recibía el tratamiento para su espalda.
El 22 de diciembre de 1995, el Gerente General de Sam's, Sr. Gregorio Marrufo Meléndez (Marrufo), despidió a 48 empleados por la tienda haber vendido menos de lo esperado. Una de las empleadas despedidas fue Mestre. Aunque Mestre llevaba más tiempo trabajando en Sam's que otros empleados, Marrufo la despidió porque alegadamente observó que en su expediente había 3 amonestaciones, prefiriendo mantener a otros empleados con menos tiempo trabajando en Sam's que Mestre por entender que eran más eficientes.
El 29 de enero de 1996, el FSE autorizó a Mestre a trabajar mientras continuaba recibiendo tratamiento médico (C.T.). Ese mismo día, ella fue a Sam's y le informó a Marrufo su deseo de continuar trabajando. Marrufo le indicó a Mestre que volviera el viernes 2 de febrero. Ese día, cuando Mestre acudió a las facilidades de Sam's, se le entregó una carta de despido retroactivo, que era efectiva desde el 21 de diciembre de 1995. En la misma se le informó a Mestre lo siguiente:

“SAM'S CLUB 6515

HUMACAO, P.R.

A quien pueda interesar:

Sirva la presente para introducir a Jeannette Mestre #s.s. 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, residente de Humacao, quien laboró para nuestra compañía Sam's Club #6515, Humacao, P.R. desde el 13 de junio hasta el 21 de diciembre del 1995.

La (El) Sra. Mestre ocupó la posición de Supervisora de cajeras, Representantes de ventas y Scanning.

El sentido de responsabilidad y gran interés que demostró Jannette la/lo hacen merecedor/ra de esta carta de recomendación y reconocimiento que aquí presentamos.

Lamentablemente, la compañía tuvo que reducir su personal (laid off) por razones de nuestras ventas que no alcanzaron nuestras expectativas y Jennette fue afectado(a) por antigüedad en esta reducción de personal.

No tenemos la menor duda que Jennette demostrará la misma alta calidad humana que demostró mientras estuvo laborando con nosotros. Tengan ustedes la certeza y seguridad que ofreciéndole una oportunidad de empleo a Jennette estarán adquiriendo en su fuerza laboral un valioso recurso humano y gran activo para su empresa.

Jennette sobrepasará sus expectativas concerniente a la calidad, productividad, servicio al cliente/invitado y sobretodo su sincera lealtad a la compañía que represente.

*1000
No vacilen en comunicarse con nosotros para cualquier información adicional.

Sinceramente,

Héctor Vázquez Gregorio Marrufo

Director de Recursos Humanos Gerente General

Wal-Mart/Sam's Club P.R. Sam's Club #6515”

[Apéndice del recurso de apelación KLAN-00-00529, anejo XXTV, pág. 171.]
Después de que Mestre fue despedida, sus funciones de test scanner fueron realizadas por Ivelisse Castro Vázquez (Castro), quien había comenzado a trabajar para Sam's durante el mes de agosto de 1995.
El 15 de febrero de 1996, Mestre presentó una querella contra Sam's en el Departamento del Trabajo y Recursos Humanos (el Departamento). En la misma Mestre alegó que ella fue despedida en violación al artículo 5a de la Ley Núm. 45 del 18 de abril de 1935 (11 L.P.R.A. § 7), según enmendada, y mejor conocida como la Ley del Sistema de Compensaciones por Accidentes en el Empleo, comenzando una investigación sobre la querella por parte del Departamento.
El 23 de mayo de 1996, el FSE dio en alta en definitiva a Mestre. Ella no se presentó a Sam's a informar que fue dada de alta del FSE y a volver a solicitar que la reinstalaran en su antiguo empleo de test scanner, sino que el 31 de mayo de 1996 le entregó al Departamento el documento notificándole que fue dada de alta. El 3 de junio de 1996, el Departamento determinó que Mestre fue despedida en violación al artículo 5a de la Ley Núm. 45, supra, por lo que ella tenía derecho a que fuera reinstalada en su empleo y a cobrar los salarios dejados de devengar hasta la fecha de su reinstalación.
El 20 de febrero de 1998, Mestre, representada por un abogado del Departamento, presentó una reclamación laboral sumaria contra Wal-Mart Puerto Rico, Inc. H/N/C Sam's Club en el Tribunal de Primera Instancia, Sala Superior de Humacao. En la querella, Mestre alegó que fue despedida sin justa causa mientras se encontraba en licencia bajo el FSE. A la luz de lo establecido en la Ley Núm. 45, supra, alegó tener derecho a que se le reinstale en su empleo, que se le paguen los salarios dejados de devengar por causa del despido injustificado, y que se le pague la suma de $10,000.00 en indemnización por los daños sufridos por ella a causa del despido ilegal. En la alternativa del tribunal resolver que el despido no fue contrario a la Ley Núm. 45, supra, Mestre reclamó que se le pagara la suma de $1,125.00 por concepto de indemnización por despido injustificado. El 5 de junio de 1998, Sam's presentó su contestación a la querella. Entre las defensas alegadas por Sam's, se mencionó que hubo justa causa para el despido de Mestre.
Luego de un largo trámite judicial, en los días 19 y 26 de enero de 2000, se celebró el juicio en su fondo. Durante el mismo declararon varios testigos, entre los que se destacan los testimonios del antiguo Gerente General de Sam's de Humacao, Gregorio Marrufo Meléndez; la empleada de Sam's que continuó realizando las labores de test scanner después que Mestre fue despedida, Castro; la oficial del Departamento del Trabajo y Recursos Humanos que atendió la querella de Mestre, Arlene López Cedeño; y el testimonio de la propia querellante, Mestre.
El 21 de marzo de 2000, el Tribunal de Primera Instancia (Hon. Luis A. Amorós Alvarez, Juez) dictó sentencia. En la misma resolvió que Mestre fue despedida sin justa causa por Sam's mientras ella se encontraba bajo una licencia del FSE. Específicamente, el Tribunal de Primera Instancia concluyó lo siguiente:

“5. No considera ni concluiría esta Corte coma habría pretendido probar durante la vista en su fondo con miras de establecer la parte demandada con claras intenciones de justificar el despido de la demandante, y, por ende, también, sobre la excepción del requisito de la antigüedad que exige el Artículo 3 de la misma Ley Núm. 80; que su despido fue además, por razones de "laid off' como reclamara inicialmente en el caso, sino también 
*1001
por razones de inhabilidades o deficiencias en el desempeño de sus funciones como también por ausentismo; que en realidad su despido obedeció más que al "laid off' a esas otras razones por cuanto nunca se expusieron como fundamentos para su despido cuando si en realidad era la razón para su despido, que aun pudiéndolo hacer por no existir impedimento alguno, nunca se hizo. Concluye, por consiguiente, el Tribunal que el despido fue por "laid off' y no además de esta razón, por las otras razones aludidas, por lo que conforme al artículo 3(f) de la Ley Núm. 80, tenía que reservarle su anterior empleo y no otorgársele a otro empleado de menos antigüedad. [Apéndice del recurso de apelación RIAN-00-00529, anejo XXII, págs. 164-165.]”

Por los motivos citados, el Tribunal de Primera Instancia condenó a Sam's a pagar a Mestre los sueldos que ella hubiera devengado desde el 30 de enero de 1996 si no hubiera sido despedida, la suma de $10,000.00 como indemnización por los daños y perjuicios sufridos por ella a causa del despido ilegal y la suma de $3,000.00 en concepto de honorarios de abogados.
No conforme con lo resuelto por el Tribunal de Primera Instancia, Sam's y Mestre acudieron ante nos mediante la oportuna presentación de sus respectivos recursos de apelación. En su recurso de apelación (KLAN-00-00529) Sam's alegó que el Tribunal de Primera Instancia erró al:

“1. Resolver que Mestre fue despedida sin justa causa;

2. Resolver que el despido de Mestre fue contrario a la Ley Núm. 45, supra, cuando ella no solicitó su reinstalación según lo requiere el artículo 5a de dicha ley.

3. Condenar a Sam's a pagarle a Mestre los salarios que ella hubiere devengado de haber sido reinstalada y una indemnización en daños y perjuicios por encima de lo establecido en la Ley Núm. 45, supra.

4. Mestre no tiene derecho a ser indemnizada, por ella no haber mitigado la falta de empleo. ”

Mientras que en su recurso de apelación (KLAN-00-00558), Mestre alegó que el Tribunal de Primera Instancia erró al no ordenar su reinstalación en el empleo, y al no condenar a Sam's a pagar una suma razonable de dinero para honorarios de abogados.
El 5 de mayo de 2000, Sam's presentó una moción en la que nos solicitó que ordenemos la transcripción del juicio en su fondo realizado en los días 19 y 26 de enero de 2000. Días después, el 23 de mayo de 2000, Sam's presentó otra moción en la que nos solicitó que ordenemos la consolidación de los recursos de apelación presentados por él y Mestre. El 30 de junio de 2000, dictamos una resolución en la que ordenamos la consolidación de los recursos de apelación KLAN-00-00-00529 y KLAN-00-00558. También autorizamos la regrabación del juicio con el único fin de que Sam's ordene a preparar, a su costo, una transcripción hecha por taquígrafo privado y se presente a manera de exposición narrativa estipulada.
Con el beneficio de haber recibido las transcripciones del juicio y los alegatos en oposición de ambas partes, nos encontramos en posición para resolver.
II
El Artículo II, Sección 16 de la Constitución de Puerto Rico (1 L.P.R.A. Const. E.L.A. Art. II, § 16) establece el derecho de todo trabajador "a protección contra riesgos para su salud o integridad personal en su trabajo o empleo." Con el fin de asegurar la protección de los trabajadores puertorriqueños, el legislador aprobó la Ley Núm. 45, supra, mejor conocida como la Ley del Sistema de Compensaciones por Accidentes en el Trabajo. Mediante esta ley se creó "un sistema de seguro compulsorio y exclusivo que promueve el bienestar de todos los trabajadores y su compensación." Matías Marti v. Municipio de Lares, Opinión de 16 de marzo de 2000, 2000 J. T.S. 57.
Entre las protecciones ofrecidas por la Ley Núm. 45, supra, se destacan la de obligar al patrono a reservar el *1002empleo de un empleado que haya sufrido una lesión o se haya enfermado en su trabajo y reinstalarlo una vez haya sanado, si cumple con las siguientes condiciones establecidas en el Artículo 5a, supra:

“1. el accidente o enfermedad ocupacional inhabilite al empleado para trabajar;

2. el empleado se acoja a los beneficios del Fondo del Seguro del Estado;

3. que dentro de los quince días del haber sido dado de alta definitivamente y autorizado a trabajar por el fondo, el empleado solicite al patrono reposición en su empleo;

4. que dicho requerimiento de reposición se haga dentro de los doce meses de haber ocurrido el accidente o enfermedad;

5. que al solicitar su reposición, el empleado esté mental y físicamente capacitado para desempeñarse en las funciones del empleo que ocupaba; y

6. que dicho empleo subsista al momento de la solicitud de reinstalación. ”

Cuevas Santiago v. Ethicon Division of Johnson & Johnson Professional Company of Puerto Rico, Inc., Opinión de 30 de junio de 1999, 99 J.T.S. 111; págs. 1315-1316; y Rodríguez Rosa v. Méndez & Co., Opinión de 18 de marzo de 1999, 99 J.T.S. 28, pág. 697, n. 8.
El empleado que cumpla con las condiciones antes mencionadas y no sea reinstalado en su empleo por su patrono, tendrá derecho a que su patrono: (1) lo reinstale en su antiguo empleo; (2) le pague a él, o sus beneficiarios, los salarios que el empleado hubiere devengado de haber sido reinstalado en la fecha que solicitó su reinstalación; y (3) a ser indemnizado de todos los daños y perjuicios sufridos a causa de la negativa de su patrono de reinstalarlo en su antiguo empleo. Torres v. Star Kist Caribe, Inc., 134 D.P.R. 1024, 1031-1032 (1994), y Vélez Rodríguez v. Pueblo Int'l., Inc., 135 D.P.R. 500, 514 (1994).
Un patrono contra el cual se presente una demanda por haber incumplido su deber de reservar el empleo y reinstalar a un empleado que sufrió un accidente o enfermedad por motivo de su empleo, podrá alegar en su-defensa que el demandante no cumplió con los requisitos mencionados en el Artículo 5a de la Ley Núm. 45, supra, o que fue despedido por justa causa. En García Díaz v. Darex Puerto Rico, Inc., Opinión de 20 de mayo de 1999, 99 J.T.S. 84, págs. 1057-1058, el Tribunal Supremo, citando comentarios de Ruy N. Delgado Zayas, Apuntes Para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño, 115 y 189 (1998), resolvió que "un patrono podrá despedir a un empleado inhabilitado y acogido al Fondo, durante los doce meses de reserva que establece el Art. 5a, sólo si mediase justa causa conforme ejemplificado por el Art. 2 de la Ley Núm. 80" del 30 de mayo de 1976 (29 L.P.R.A. § 185b), según enmendada, y comúnmente conocida como la Ley de Despido Injustificado. Véase además a Rodríguez Rosa v. Méndez & Co., supra, pág. 693; Vélez Rodríguez v. Pueblo Int'l., Inc., supra, pág. 516; y Santiago v. Kodak Caribbean, LTD., 129 D.P.R. 763, 770 (1992).
El Artículo 2 de la Ley Núm. 80, supra, establece lo siguiente:

“§185b. Indemnización por despido sin justa causa-Justa causa para el despido

Se entenderá por justa causa para el despido de un empleado de un establecimiento:

(a)...

(b)...

*1003
(c) ...

(d)...

(e)...

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias anticipadas, o que prevalecen al ocurrir el despido. ”

El Artículo 3 de la Ley Núm. 80 (29 L.P.R.A. § 185c), supra, establece lo siguiente:

“§185c. Indemnización por despido sin justa causa-Orden de retención de empleados

En cualquier caso en que se despidiesen empleados por las razones indicadas en los incisos (d), (e) y (f) de la see. 185 (b) de este título, el patrono estará obligado a retener con preferencia en el empleo a los empleados de más antigüedad, siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos, entendiéndose que se dará preferencia a los empleados despedidos en caso de que dentro de los seis (6) meses siguientes a su cesantía tuviere necesidad de emplear a una persona en labores iguales o similares a las que desempeñaban dichos empleados al momento de su despido y dentro de su clasificación ocupacional siguiéndose, también, el orden de antigüedad en la reposición, excepto, y en ambas situaciones, en aquellos casos en que haya una diferencia clara o inconcursa en favor de la eficiencia o capacidad de los trabajadores comparados en cuyo caso prevalecerá la capacidad. ”

En las páginas 36 a la 37 de la Guía Revisada Para la Interpretación y Aplicación de la Ley Núm. 80, aprobada por el Departamento del Trabajo y Recurso® Humanos, el 30 de mayo de 1976, según enmendada, se establece lo siguiente:

“Las causales de despido por razones económicas son las que están contenidas en los incisos (d), (e) y (f) del artículo 2 de la ley. El análisis de los tres incisos establece cuatro situaciones diferentes en las cuales puede darse el despido de empleados con justa causa, que son las siguientes:

1. Despido por cierre total y permanente de operaciones.

2. Despido por cierre total y temporero de operaciones.

3. Despido por cierre parcial de operaciones o reducciones parciales en el empleo.

4. Despido por cambios tecnológicos, de reorganización, estilo, diseño, naturaleza del producto o en los servicios rendidos al público. ”

Véase además, A. Acevedo Colom, Legislación Protectora del Trabajo Comentada, 175 (6ta edición revisada).
Más adelante, en las páginas 38 a la 41 de la Guía Revisada Para la Interpretación y Aplicación de la Ley Núm. 80, supra, al comentar el cierre parcial de operaciones o reducciones parciales de empleo se menciona lo siguiente:

“El cierre parcial de operaciones es aquél en que se descontinúan ciertas operaciones de un establecimiento permaneciendo otras en operación. Una reducción parcial en el empleo es aquélla en que el patrono reduce el número de empleados que se desempeñan en la empresa, sin descontinuar operaciones, pero reduciendo el volumen o magnitud de las mismas. Ambas situaciones antes expresadas, reciben un tratamiento 
*1004
similar bajo la ley. ”

Las disposiciones de ley relativas a antigüedad operan de forma similar para los casos de cierre parcial y cierre total.
En los casos de cierre parcial por un término de más de tres meses, pero menor de seis, el patrono está obligado a observar el orden de antigüedad dentro de la misma clasificación ocupacional, tanto al momento de cesantear empleados como al momento de reemplearlos. La inobservancia de este requisito convierte el despido de los empleados a los cuales les asistía el derecho de conservar el empleo de conformidad con la ley, en uno injustificado. De esto ocurrir, independientemente de que sea al momento del despido o del reempleo, al empleado le asiste el derecho a recibir de su patrono la indemnización por despido injustificado que dispone la Ley Núm. 80, supra.
La retención o el reempleo preferente a base de antigüedad debe hacerse dentro de la misma clasificación ocupacional y no entre clasificaciones ocupacionales diferentes. La ley así lo dispone en el artículo 3. La Oficina del Procurador del Trabajo ha interpretado que, en los casos que debe observarse un orden de antigüedad en el despido de empleados por razones económicas, la Ley Núm. 80, supra, no permite realizar acciones de "bumpingo sea, que la ley no permite el desplazamiento entre diferentes clasificaciones ocupacionales. Opinión Administrativa Núm. 12,179.
Como norma, no es común que surjan controversias con relación a la clasificación ocupacional en que se desempeña un empleado. No obstante, de esto surgir, los tribunales deberán tomar en consideración los siguientes factores para determinar la clasificación ocupacional en que se desempeña el empleado:

“1. Las funciones y deberes del puesto.

2. Los requisitos para ocupar la plaza, incluyendo los conocimientos y destrezas necesarias, así como la preparación académica.

3. La forma de compensación.

4. La forma en que se realiza el trabajo. ”

La función de establecer las clasificaciones ocupacionales en una empresa y determinar en cuál de ellas se desempeña un empleado, constituye una prerrogativa gerencial que, de ordinario, debe merecer gran deferencia a los tribunales. Estos sólo deben alterar la determinación original del patrono cuando resulta obvio que sostener la misma conllevará un fracaso de la justicia.
La ley dispone que en los casos que exista una diferencia clara e incorcusa a favor de la eficiencia o capacidad de trabajadores comparados, prevalecerá la capacidad sobre la antigüedad. En los casos de cierres parciales y/o temporeros, o reducciones en el empleo, la eficiencia o capacidad en el empleo reviste un valor secundario al de la antigüedad. Esto obedece al hecho de que cuando un grupo de personas se ha desempeñado por un período de tiempo en una clasificación ocupacional, se entiende que todos cumplen en términos generales con los requisitos para ocupar la plaza cubriendo unos niveles mínimos de excelencia. Pof lo tanto, si la acción del patrono sólo consiste en una reducción de la fuerza obrera, entonces el requisito que como norma regula el orden preferente de cesantía y reempleo, es la antigüedad.
En los casos de un cierre parcial por un término que excede los seis meses, el patrono viene obligado por ley a observar el orden preferente de antigüedad al momento de cesantear empleados. Incumplir el orden de antigüedad al momento del despido, convierte el mismo en uno injustificado. No obstante, una vez transcurren seis meses desde el momento del despido, si al patrono le surge la necesidad de reclutar empleados, entonces *1005puede hacerlo sin la obligación de observar orden preferente alguno de antigüedad.
De alegar el patrono que ante una situación de cierre parcial o reducciones en el empleo, se justifica que se tome la eficiencia o capacidad de los trabajadores como criterio rector para determinar el orden preferente de despidos y reempleo, entonces está en la obligación de probar esto. A esos efectos, debe presentar evidencia admisible que acredite lo siguiente:

“1. Ha utilizado un mecanismo de evaluación razonable, el cual mide de forma apropiada y objetiva la capacidad del empleado para realizar las junciones del puesto.

2. De las evaluaciones realizadas, surge una diferencia clara e incorcusa a favor de la eficiencia o capacidad de ciertos empleados.

3. Las funciones del puesto son de tal naturaleza que la diferencia en términos de la capacidad o eficiencia de los empleados, conlleva una diferencia sustancial en términos económicos para la empresa y quizás en la capacidad de subsistencia de la misma. ”

Véase además, Acevedo Colom, supra, págs. 177-180 y 183-185.
Entre las condiciones que un empleado bajo licencia del FSE debe cumplir para tener derecho a que su patrono lo reinstale en su antiguo empleo, es que dentro de los 15 días después de haber sido de alta definitivamente por el FSE, el empleado solicite su reposición en su antiguo empleo. Rodríguez Rosa v. Méndez & Co. supra, pág. 697, n. 8; Cuevas Santiago v Ethicon Division of Johnson & Johnson Professional Company of Puerto Rico, Inc., págs. 1315-1316; Vélez Rodríguez v. Pueblo Int'l, Inc., supra, pág. 514; y Torres v. Star Kist Caribe, Inc., supra, pág. 1030.
III
Como primer error, Sam's alega que el Tribunal de Primera Instancia erró al resolver que el despido de Mestre fue sin justa causa. Resolvemos que este primer error no fue cometido.
Primero, la antigüedad, a la luz de la Ley Núm. 80, supra, se debió de establecer solamente a base de los empleados que ejercían la clasificación ocupacional de test scanner en la tienda de Sam's de Humacao y no a base de la totalidad de empleados de la tienda. Es decir, para demostrar que el despido de Mestre cumplió con el principio de antigüedad, se debió haber presentado evidencia que probara:

“1. Los empleados que ejercían la ocupación de test scanner que no fueron despedidos, tenían más antigüedad que Mestre al momento de ocurrir la reducción de empleados.

2. Que en el período de 6 meses después que Mestre fue despedida, ningún empleado que tuviera otra clasificación ocupacional ejerciera las funciones de test scanner en la tienda, o que Sam's reclutara algún nuevo empleado para ejercer las funciones de test scanner en la tienda. ”

En cambio, durante el juicio sólo se probó que varios empleados de la tienda Sam's de Humacao comenzaron a trabajar luego que Mestre empezara, sin especificar cuáles eran sus ocupaciones en la tienda. Tampoco se pasó prueba con relación a la antigüedad de los empleados no despedidos que ocupaban la clasificación de test scanner, a excepción de Castro.
Castro, aunque comenzó a trabajar en Sam's de Humacao después de Mestre, tenía mayor antigüedad que Mestre en la posición de test scanner. Esto se debe a que Castro realizaba las funciones de test scaner en la tienda desde el mes de octubre de 1995, mientras que Mestre comenzó a ejercer las mismas funciones desde el mes de noviembre de 1995. Véanse, Transcripción de la vista del 19 .de enero de 2000, pág. 223, y
*1006Transcripción de la vista del 26 de enero de 2000, págs, 12-13. Por lo tanto, a la luz de los Artículos 2 y 3 de la Ley Núm. 80, supra, cuando ocurrió la reducción parcial de empleados, Mestre tenía que ser despedida, y no Castro, pues la primera tenía menos antigüedad que la segunda en la posición de test scanner.
Pero, por el otro lado, Sam's no desfiló prueba con relación a los demás empleados que junto a Castro, continuaron ejerciendo las funciones de test scanner en la tienda después que Mestre fue despedida. Tampoco Sam's demostró que dentro del período de 6 meses después que Mestre fue despedida, no se reclutó nuevo personal que ejerciera las funciones de test-scanner en la tienda, o que no ocurrieron desplazamientos de empleados de otras clasificaciones ocupacionales^a la clasificación ocupacional de test scanner (bumping) en la tienda.
Según el inciso (a) del Artículo 11 de la Ley Núm. 80, 29 L.P.R.A. § 185k (a), el patrono es quien viene obligado a probar que el empleado demandante fue despedido por justa causa. Es decir, a la luz del Artículo 11, id.., se crea una presunción de que el despido del empleado [demandante] fue injustificado. Le toca al patrono rebatir dicha presunción. Si el patrono opone como defensa afirmativa haber mediado justa causa para el despido, le corresponde probar, mediante la preponderancia de la evidencia, que el despido estuvo justificado i" Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 643, 650 (1994). Véase, además, a Rivera Aguila v. K-Mart de P.R., 123 D.P.R. 599, 610 (1989), y Srio. del Trabajo v. I.T.T., 108 D.P.R. 536, 546 (1979). Además, todo patrono tiene la obligación de "hacer, guardar, y conservar las nóminas de pago de las personas empleadas por el, con expresión de los salarios devengados y de las horas regulares y horas extras trabajadas por cada una y demás condiciones y prácticas de empleo mantenidas por Art. 15 de la Ley Núm. 379 del 15 de mayo de 1948 (29 L.P.RA. § 284), según enmendada.” [Enfasis suplido.] Por lo tanto, Sam's, como patrono, es quien está en mejor posición para probar quiénes eran los empleados que ejercieron la clasificación ocupacional de test scanner en la tienda para la fecha en que Mestre fue despedida y en el período de seis (6) meses después de su despido. Sin embargo, Sam's no presentó tal evidencia en juicio.
Por otro lado, el Tribunal de Primera Instancia no le brindó credibilidad a las alegaciones de Sam's de que el motivo del despido de Mestre era una diferencia "clara e inconcursa" a favor de la eficiencia o capacidad de otros empleados de menor antigüedad. Es doctrina claramente establecida por el Tribunal Supremo, "que un tribunal apelativo no intervendrá con las determinaciones de hechos ni con.la adjudicación de credibilidad que hizo el juzgador de los hechos, salvo que haya mediado pasión, prejuicio, parcialidad o error manifiesto." Rolón García v. Charlie Car ental, Inc., Opinión de 2 de junio de 1999,99 J.T.S. 89, pág. 1099.
De un estudio del recurso, resolvemos que el Tribunal de Primera Instancia no actuó con pasión, prejuicio ni parcialidad, ni cometió error manifiesto al no rendirle credibilidad a la alegación de Sam's de que Mestre era claramente menos eficiente que otros empleados de menor antigüedad.
Primero, la carta de despido entregada a Mestre por Sam's describe a Mestre como, una empleada de gran "calidad, productividad, servicio al cliente/invitado y sobretodo su sincera lealtad a la compañía que represente." Apéndice del recurso de apelación KLAN-00-00529, anejo XXIV, pág. 171. Además, en la «altase menciona que las razones del despido fueron por reducción de personal por motivos económicos y antigüedad.
En Puerto Rico no hay ley alguna que le exija al patrono, que al despedir al empleado lo haga ¡en ruma forma determinada, ni por escrito ni con un aviso previo. Tampoco nuestra legislación obliga al patrono a informarle al trabajador en el momento del despido, ni luego de ello, las razones que tuvo para despediría, excepto para defenderse de una acción judicial." Santiago v. Kodak Caribbean, LTD., supra,.pág. 775. Pero, una vez un patrono informa a su empleado los motivos de su despido por medio de una carta, entonces nada-impide que la misma pueda ser tomada en consideración por un tribunal para resolver si existía justa causa para el despido del empleado. Véase a Srio. del Trabajo v. I.T.T., supra, págs. 546-547; en especial, cuando '"las razones para el despido de un empleado, se supone, existan con anterioridad a que ocurra-eL-mismo," Srio. del Trabajo v. Penney Co., Inc., 119 D.P.R. 660, 669 (1987). De hecho, la redacción de la carta es coetánea ¡con la *1007fecha en que se efectuó el despido.
Segundo, en el testimonio del propio gerente general de la tienda Sam's de Humacao, Sr. Marrufo, se describe el desempeño de Mestre como uno bueno. Este hizo claro que si no hubiera sido porque las ventas no cumplieron las expectativas y el presupuesto, ella no hubiera sido despedida. Véase Transcripción de la vista del 19 de enero de 2000, págs. 206 y 213.
Tercero, Sam's nunca presentó en evidencia los expedientes de los demás empleados ■ que ejercían la clasificación ocupacional de test scanner al momento en que Mestre fue despedida. Por lo tanto, Sam's nunca logró demostrar que no había empleados de menor antigüedad que Mestre en la clasificación ocupacional de test scanner, ni que ellos eran claramente más eficientes que Mestre.
En conclusión, al estudiar la totalidad de los recursos de apelación presentados ante nuestra consideración, resolvemos que la totalidad de la evidencia presentada por Sam's durante el juicio, no logró derrotar la presunción legal de que el despido de Mestre fue sin justa causa.
IV
Como segundo error, Sam's alegó que el Tribunal de Primera Instancia erró al resolver que el despido de Mestre fue contrario a la Ley Núm. 45, supra, porque ella no solicitó su reinstalación, según lo requiere el Artículo 5a de dicha ley, supra. Resolvemos que el segundo error no fue cometido.
Mestre fue despedida por Sam's el día 22 de diciembre de 1995, fecha en que Mestre se encontraba bajo una licencia del FSE. Cuando, el 29 de enero de 1996, Mestre fue autorizada a trabajar mientras continuaba recibiendo tratamiento médico del FSE (C.T.), ella se reportó a trabajar inmediatamente ante Sam's. Sin embargo, Sam's le informó que había sido despedida.
Sam's alega en su escrito de apelación que la obligación del patrono de reinstalar a un obrero lesionado bajo licencia del FSE, sólo nace cuando el empleado es dado de alta en definitiva y no cuando es dado en alta con tratamiento (C.T.). Resolvemos que tal alegación es incorrecta.
Primero, Delgado Zayas, supra, comenta en la página 194 de su obra (Ediciones de 1996 y 1998) lo siguiente:
Entendemos que son 12 meses por accidente. Dentro de ese término, cada vez que al empleado lo den de alta (con o sin tratamiento) tiene derecho a que se reinstale en su empleo si lo solicita dentro de los 15 días del alta y dentro de los 12 meses del accidente.
En vista de los propósitos de la fey y de que la ley en ningún momento habla de alta definitiva, sino solamente de "alta", resulta importante señalar que la reserva y obligación de reinstalar es igual para el empleado que lo dan de alta en definitiva como para el que lo dan de alta con tratamiento (C.T.). La letra de la ley es bien clara y está en total armonía con sus propósitos. [Enfasis suplido.]
Segundo, en Torres v. Starkist Caribe, Inc., supra, el Tribunal Supremo resolvió que el C.T. no interrumpe el periodo de doce (12) meses de reserva que establece el Artículo 5a de la Ley Núm. 45, supra. Véase, además, a Cuevas Santiago v Ethicon Division of Johnson & Johnson Professional Company of Puerto Rico, Inc., supra, pág. 1316. Empero, el Tribunal Supremo nunca ha resuelto que un empleado bajo C.T. no tenga derecho a ser reinstalado en su empleo durante el período de doce (12) meses que establece el Art. 5a de la Ley Núm. 45, supra. Ante esta situación, resolvemos que a la luz del artículo 5a, supra, un patrono tiene la obligación de reinstalar a un empleado bajo C.T. si el empleado solicita la reinstalación dentro del período de reserva de 12 meses. Si una vez transcurre el período de 12 meses de reserva, el empleado continua en C.T., entonces el despido del empleado no constituirá una violación al Artículo 5a de la Ley Núm. 45, id.
*1008En el presente caso, Mestre solicito a Sana s la reinstalación en su empleo dentro del período de reserva de 12 meses mientras se encontraba en C.T. Por lo tanto, ella tenía derecho a ser reinstalada. Sin embargo, Sam's le informó de su despido, violando de esta manera el Artículo 5a de la Ley Núm. 45, id. Una vez Mestre fue informada que fue despedida, ella no tenía la obligación de volver a solicitar a Sam's la reinstalación en su empleo cuando fue dada de alta definitivamente por el FSE. Según los estudiosos del Artículo 5a, id., el acto de Mestre tener que solicitar de nuevo su reinstalación en Sam's, era un acto inútil y sin propósito alguno.
Ruy Delgado Zayas, supra, al discutir esta situación en las páginas 190 a la 192 de su libro (ediciones de 1989,1996 y 1998), comenta lo siguiente:

“La protección que el legislador pretendió ofrecerle a los trabajadores mediante la aprobación de esta disposición de ley, cubre dos aspectos, según indicamos anteriormente, que constituyen dos obligaciones básicas del patrono:

1. ...a reservar el empleo que desempeña el obrero o empleado al momento de ocurrir el accidente, y ...
2. ...a reintalarlo en el mismo, sujeto a las siguientes condiciones...".
La primera obligación acarrea, además, como consecuencia obligada, la de no despedir a dicho obrero. Si el patrono está obligado a reservar el empleo del trabajador, entonces no puede en momento alguno despedirlo.
La segunda obligación del patrono puede surgir, tanto cuando el trabajador haya sido despedido como cuando no lo ha sido.
La diferencia consiste en que cuando el obrero está bajo tratamiento en el Fondo del Seguro del Estado, es dado dd alta y el patrono nó lo había despedido, el obrero tiene la obligación de informarle a dicho patrono su disponibilidad para trabajar, dentro de los quince (15) días, a partir de la fecha que fue dado de alta. Por el contrario, si a la fecha de ser dado de alta, ya el obrero fue despedido de su trabajo y notificado de ello, entendemos que el patrono ha provocado con su acción que no sea necesario cumplir con el requisito mencionado de reclamar trabajo. Es obvio que si el obrero ha sido despedido expresamente, éste no va a ir, como cuestión de práctica y lógica, a solicitar su antiguo empleo, ya que el patrono le informó definitivamente su posición al respecto. Bien pudiera preguntarse, ¿qué empleo va a solicitar?
Por lo tanto, el legislador no le puede haber exigido al trabajador un acto inútil o sin propósito alguno.
La causa de acción del obrero, en situaciones como la antes indicada, surge con el despido injustificado de que es objeto, y no está supeditada a que el obrero en un vano empeño, al ser dado de alta, vaya a solicitar que se reponga en su empleo, de aquél que en forma expresa y sin justa causa fue despedido previamente.
¿Qué uso o función tendría dentro del marco protector de la ley, el que se cumpla formalmente con esa exigencia?
El propósito de ese requisito es evitar que el patrono pueda levantar como defensa, frente a la reclamación del trabajador, que no lo había repuesto en su empleo porque no sabía que éste había sido dado de alta y que estaba disponible para trabajar. En otras palabras, para establecer una fecha cierta como límite de la responsabilidad del patrono, ya que éste carece de la facultad de anticipar el futuro. Es decir, si transcurren los quince (15) días sin solicitar el obrero su reposición, éste pierde su derecho a ello y el patrono adviene libre para llenar el puesto del obrero o para no reservárselo más.
¿Qué necesidad hay de ésto cuando ya el patrono despidió al obrero? Es decir,, cuando ya el patrono ha decidido con sus propios actos el no cumplir con la ley. [Enfasis suplido].
*1009Véase además a Fernández Loaiza v. Autoridad de Puertos de Puerto Rico (KLAN-95-00805), Sentencia del 23 de mayo de 1997, págs. 15-16; Yordan Gómez v. Ponce Airlines Services, Inc. (KLAN-98-00134), Sentencia del 28 de octubre de 1998, págs. 9-11; y Lyntha A. Figueroa Rivera, La Reserva de Empleo del Artículo 5(A) de la Ley de Compensaciones por Accidentes del Trabajo, 33 Rev. Der. Puertorriqueño 225, 232 (1993).
En conclusión, resolvemos que al ser despedida expresamente por Sam's, Mestre no tenía que cumplir con el requisito de notificar a su patrono de que fue dada de alta definitivamente por el FSE, dentro de los 15 días después de que fue dada de alta definitivamente, como condición para poder presentar una demanda contra Sam's por haber incumplido sus obligaciones a la luz del Artículo 5a de 3 Ley Núm. 45, supra. El segundo error alegado por Sam's no fue cometido.
V
Como tercero y cuarto errores, Sam's alega que el Tribunal de Primera Instancia erró al ordenar el pago a Mestre de los salarios que ella hubiere devengado de haber sido reinstalada y al resolver que Mestre tenía derecho a ser indemnizada, a pesar que ella no mitigó la falta de empleo.
La doctrina de mitigación de daños postula el deber que tiene una persona que sufre perjuicios de adoptar aquellas medidas razonables pertinentes y a su alcance tendentes a reducir el monto de los mismos. Fresh-O-Baking v. Molinos de P.R., 103 D.P.R. 509, 520 (1975). "Empero, su vigencia no puede derrotar totalmente la causa de-acción de la recurrente como concluyó el Tribunal de [Primera] Instancia." Id, pág. 521. Es decir, la doctrina de mitigación de daños puede reducir la cantidad de la indemnización, pero no puede eliminarla.
En el caso de autos, Mestre, al ser despedida sin justa causa cuando se encontraba disfrutando una licencia del FSE, tiene derecho a que Sam's la reinstale en su antiguo empleo, le pague los salarios que ella hubiere devengado de haber sido reinstalada y, "además le responderá de todos los daños y perjuicios que haya ocasionado." Art. 5a de la Ley Núm. 45, supra. Véase, además, a Torres v. Star Kist Caribe Inc., supra, págs. 1031-1032; Vélez Rodríguez v. Pueblo Int'l., Inc., supra, pág. 514.
De los tres remedios a que tiene derecho Mestre, resolvemos que el único que puede ser afectado por la doctrina de mitigación de daños es el remedio a ser indemnizada en daños y perjuicios sufridos, por ser el mismo muy similar a la acción de daños y perjuicios establecido en el Articulo 1802 del Código Civil (31 L.P. R.A. § 5141). En cuanto los otros dos remedios (reinstalación en su antiguo empleo y pago de salarios dejados de devengar), la letra del artículo muestra un carácter simplemente protector o punitivo, por lo que el hecho de que el demandante haya tratado de mitigar los daños sufridos a causa del despido ilegal, no debe tener ningún efecto al momento del tribunal dictar sentencia. Véase el Informe Conjunto de las Comisiones del Trabajo y Asuntos del Veterano y Gobierno de la Cámara de Representantes del 6 de abril de 1973, citado en Torres v. Star Kist Caribe, Inc., supra, págs. 1031-1032.
En el caso de autos, Mestre declaró que después que fue despedida buscó empleo principalmente en tiendas de ropa, trató de establecer un negocio de hamburguesas y tomó un curso de facturación de Cobros y Planes Médicos en el Community College en Humacao. En el negocio de hamburguesas, obtuvo ingresos de $3,270. Mestre no solicitó trabajo en restaurantes o negocios de comida rápida del área de Humacao, lo que causó que ella no pudiera obtener un empleo desde la fecha en que fue despedida por Sam's hasta la celebración del juicio en su fondo. Esto resultó, según su testimonio, en intranquilidad y desesperación al no poder cumplir con las necesidades y obligaciones económicas previamente adquiridas por su familia.
De su propio testimonio surge que la inacción llevó a Mestre a no trabajar por tres (3) años y medio. En conclusión, ante los daños probados por Mestre, los ingresos generados en su negocio de hamburguesas y por no haber intentado razonablemente obtener otro empleo, mitigando los daños sufridos, deducimos los $3,270 *1010que Mestre obtuvo como ingreso y, así, reducimos la indemnización a $6,830.00.
VI
Resuelto el primer señalamiento de error de Mestre al discutir los pasados dos errores, pasamos a resolver el segundo y último error de Mestre. En él, se alega que el Tribunal de Primera Instancia erró al no condenar a Sam's a pagar una suma razonable de honorarios de abogado.
El Artículo 3 de la Ley Núm. 402 de 12 de mayo de 1950 (32 L.P.R.A. § 3116), según enmendada, establece que "serán nulos y contrarios al orden público todos los contratos, convenios o acuerdos en que trabajadores o empleados se obliguen directa o indireccamente a pagar honorarios a sus abogados en casos de reclamaciones judiciales o extrajudiciales contra sus patronos bajo la legislación laboral de Puerto Rico o bajo la legislación laboral del Congreso de Estados Unidos aplicable a Puerto Rico, o al amparo de un convenio de naturaleza individual o colectivo." Por motivo del citado estatuto, los tribunales siempre deberán condenar al patrono perdedor en una reclamación laboral a pagar honorarios de abogados a favor del obrero, independientemente que el patrono haya actuado con temeridad durante la tramitación del caso. Belk Arce v. Martínez, Opinión de 30 de junio de 1998, 98 J.T.S.. 92, pág. 1319; López Vicil v. ITT Intermedia,. Inc., opinión de 4 de abril de 1997, 97 J.T.S. 42, pág. 839.
En el inciso "b” del artículo 11 de la Ley Núm. 80, supra, sec. 185k(b), se establece que cuando el tribunal crea que el despido fue efectuado sin justa causa, éste ordenará al patrono a depositar una suma para honorarios de abogado, no menor del 15% del total de la compensación del trabajador. En López Vicil v. ITT Intermedia, Inc., supra, pág. 1254, el Tribunal Supremo estableció la norma que en los casos de reclamación bajo- la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. § 146 et seq.), según enmendada, de ordinario, el patrono perdedor será condenado a pagar una suma de dinero equivalente al 25% de la indemnización base concedida al trabajador como honorarios de abogado. Si el abogado del empleado entiende que tiene derecho al pago de una suma mayor en honorarios de abogados, entonces podrá solicitar al tribunal que condene al patrono a pagar unos honorarios a base de las horas trabajadas en el caso. Para ello, el abogado del empleado deberá presentar un memorando juramentado en el que detalle las horas trabajadas en el caso y la tarifa a cobrarse por hora.
La razón por la cual el Tribunal Supremo estableció que en los casos bajo la Ley Núm. 100, id., el patrono perdedor debe ser condenado a pagar el 25% de la indemnización base y no el 15% como en las reclamaciones bajo la Ley Núm. 80, supra, es la siguiente:
“Como regla general, los casos por discrimen son más complicados y costosos que los casos bajo la Ley Núm. 80. Aquéllos, por lo regular, requieren un descubrimiento de prueba costoso, ya que, en la mayoría de los casos, la evidencia del supuesto discrimen está en manos del patrono. Además, usualmente, los abogados de los trabajadores-demandantes cuentan con menos recursos que los abogados de los patronos. [López Vicil v. ITT Intermedia, Inc., supra, pág. 1254.]”
El caso que nos ocupa trata de una demanda por despido ilegal por despedirse injustificadamente a una empleada mientras se encontraba disfrutando de una licencia bajo el FSE. Por lo tanto, siendo esta acción más similar a una acción bajo la Ley Núm. 80, supra, que a una acción por discrimen en el empleo, resolvemos que Sams debe ser condenado a pagar una suma de dinero equivalente al 15% de la compensación e indemnización concedida a Mestre en honorarios de abogado. Si el abogado de Mestre entendiera que el 15% de la compensación e indemnización concedida a su cliente no es un pago justo por su labor en el presente caso, entonces podrá solicitar que se condene a Sam's a pagar honorarios de abogado a base de las horas trabajadas en el caso. Para ello, deberá presentar ante el Tribunal de Primera Instancia el correspondiente memorando juramentado de horas trabajadas y tarifa a cobrarse por hora.
VII
Por los fundamentos que anteceden, se ordena a Wal-Mart Puerto Rico, Inc. H/N/C Sam's Club a reinstalar *1011en su empleo de test scanner a Jeannette Mestre Rodríguez, a pagarle los salarios que hubiere devengado desde el 29 de enero de 1996 hasta la fecha en que sea reinstalada en su empleo, a pagar la suma de $6,830.00 en concepto de indemnización por los daños y perjuicios sufridos a causa del despido ilegal, así como el 15% de la suma total de la compensación e indemnización concedida en concepto de honorarios de abogado. Así modificada, confirmamos la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao, el 21 de marzo de 2000, en el Caso Civil Núm. H PE1998-0070.
Lo acordó y ordena el Tribunal y lo certifica la Subsecretaria General.
Gladys E. Ortega Ramírez
Subsecretaría General